## Case No. 17,585.

WHITNEY et al. v. EMMETT et al.

[Baldw. 303;[1] 1 Robb. Pat. Cas. 567.]

Circuit Court, E. D. Pennsylvania. April Term, 1831.

DEPOSITIONS—EXAMINATION OF WITNESS IN COURT — PATENTS — UTILITY — PRIOR KNOWLEDGE AND USE — IMPROVEMENTS — NOVELTY — SUFFICIENCY OF SPECIFICATIONS—DISCLAIMERS—CONSTRUCTION OF STATUTES.

1. If the deposition of a witness who is attending in court is read without objection, he may be examined in chief by the party who read his deposition.

2. A patented invention is deemed useful if it is not frivolous: the want of utility is good cause for not granting the patent. but not for setting it aside.
[Cited in Rowe v. Blanchard. 18 Wis. 442.]

[1] [Reported by Hon. Henry Baldwin, Circuit Justice.]

3. The prior knowledge and use of the invention which avoids a patent. relates to the time of the application, not the discovery, and to public use with the knowledge and privity of the patentee. not to a private or surreptitious use in fraud of the patent.
[Cited in Allen v. Blunt. Case No. 217; Kelleher v. Darling, Id. 7,653: Bates v. Coe, 98 U. S. 46.]

4. If the application is made in a reasonable time after the discovery. any intermediate knowledge or use will not affect the patent. But the invention must be new to all the world.

5. If the patent is for an improvement, it must be substantially new. one capable of application by the means pointed out by the patent, specification, drawing, model and the old machine.

6. If by these means the invention and the mode of using it, are intelligible to persons skilled in the subject. the requisites of a specification by the third section of the act of 1793 [1 Stat. 32] are complied with.
[Cited in Davoll v. Brown, Case No. 3,662.]

7. It is not necessary that the disclosure of the secret should be such as to enable the public to use the invention after the patent has expired. as in England. such being the consideration on which patents are granted there. The difference between their patent laws and ours explained.

8. If the patent is broader than the invention, if not sufficiently descriptive, taken in connection with the specification, &c., the plaintiff cannot recover. But though the patent is too broad in its general terms, it will be limited by a summary and disclaimer, if they show the thing intended to be patented, and that no claim is made to any thing before known or used.
[Cited in Allen v. Blunt, Case No. 217.]

9. A patent is a contract with the public in the terms of the law. which must be complied with in the same good faith as other contracts, but as it gives a right of property, it ought to be protected by a liberal construction of the law and the acts of the patentee.
[Cited in Davis v. Leslie, Case No. 3,639; Woolridge v. McKenna, 8 Fed. 659.]
[Cited in brief in People v. Hulburt, 46 N. Y. 113. Cited in U. S. v. Cottingham, 1 Rob. (Va.) 620.]

10. A circuit court can give a judgment declaring a patent void only in the cases provided for in the sixth section. If the patent is defective for any other cause, the court can only render a general judgment for the defendant.

11. What is a proper subject for a patent, &c.

This was an action to recover damages for the violation of a patent for an improved method of making glass knobs. as described in the specification. "To all persons to whom these presents shall come. Henry Whitney, agent of the New England Glass Company, and Enoch Robinson, mechanician. both of Cambridge in the county of Middlesex, and state of Massachusetts, send greeting: Be it known, that we, the said Henry Whitney and Enoch Robinson. have invented, constructed, made and applied to use, a new and useful improvement in the mode of manufacturing by machinery, at one operation, glass knobs or trimmings for doors, stoves, drawers. sideboards. bureaus, wardrobes, and all kinds of furniture, and other things where glass handles, knobs or ornaments may be used and fastened by spin-

dles running through the centre of them, specified in the words following, to wit: This improvement in making knobs, consists in compressing them in moulds, in the manner following. The mould is made of a composition of brass and copper, cast steel or other metal, of a size and shape suitable to contain the knob, of which mould a model and drawing is deposited in the patent office. It is in two parts, a top part and bottom part; the lower or bottom part is to receive the melted glass and form the main part of the knob, and the top part is to press the knob, form its ornamental face, and to perforate it with a pin longitudinally. The bottom part is made in two pieces, fastened together by a hinge on the backside, with handles on each side, in front, to open and shut it, and a clasp to fasten it together, while receiving the melted glass and the impression. The bottom part terminates upward by a tube, cylindrical or nearly so, from one-eighth to four-eighths of an inch high, according to the size of the article to be made, into which the top part of the mould enters to compress and form the knob and stamp its face. The top part is of a size and shape suitable to enter and fill the cylindrical space at the top of the bottom part; on its face or underside is a die, figured with circles, rings, hearts, roses, leaves, fruit, animals, or any other fancy or ornamental shape, which has been or may be used in brass or other ornaments, or the face may be made plain. Into the top part is fastened a steel pin, of a square, round or any other shape, projecting from it perpendicularly downward, of a length sufficient to penetrate quite through the article to be made. To reject the surplus quantity of glass and prevent its accumulation in the mould from the quantity displaced by the pin in perforating the knob, a hole nearly of the size and shape of the pin, is made perpendicularly downwards through the under part of the bottom piece of the mould, through which the surplus glass is driven by the expression in forming the article. To use the mould, we place the bottom part on a table, on which is perpendicularly erected a standard twelve or fourteen inches high, for the purpose of attaching to it a lever, to force down the top part and give the impression, and to hang a gate turned on a pivot, to which the top part of the mould is fixed. On the end of the lever behind the standard, a spiral or other spring is fastened, which is also fastened to the table, to suspend the top part of the mould when it is raised by the lever. The position of the top is so adjusted, with reference to the bottom part of the mould, by a guide fastened to the standard, that when the power is applied to the lever to compress the glass, the top exactly shuts into the bottom part and forces the pin through the knob into the hole below it. The mould being thus prepared for use, the top is raised by the lever and turned a little on one side by the gate to give room to drop the melted glass into the bottom part of the mould. The glass is then gathered from the pot and dropped into the bottom part of the mould, which is already closed and secured against opening by the clasp; the gate is then turned back against the guide, so that the top of the mould is brought directly over the bottom, and by the application of power to the lever the article is at once compressed, formed and finished; the top is then raised by the lever, the clasp on the bottom part is unfastened, the mould is opened by the handles, and the knob taken out so entirely finished, that it only requires fire polishing to make it a neat article fit for immediate use. We do not claim to be the original inventors of the mould, as applied to the formation of glass wares, but admit that for many purposes it has been heretofore used. Our invention consists in this, a new combination of the various parts of the mould, with the use of the pin and machinery before described, in such a manner as without any blowing to produce a finished knob with a hole perforated through it, and a neck or enlargement, so that it will not come out of the mould without opening it, at one operation, by compression merely. In testimony that the above is a true specification of our said improvement, as above described, we have hereunto set our hands and seals, this 22d day of August, in the year of our Lord 1826."

A drawing and model of the improved machine were produced at the trial, as also the old machine, and the one used by the defendants, which was alleged to be the same in substance as the one patented; the fact and extent of the infringement were admitted, as well as the general utility of the improved machine, so far as was required by law. The cause turned on the validity of the patent, which was alleged to be void, because the invention was not new, and the specification defective; much evidence was heard and read on the questions of fact, but no questions of law arose except such as were founded on the patent and specification.

C. Ingersoll and C. J. Ingersoll, for defendants.

The patent is void on account of the defect in the specification, in not describing what parts of plaintiff's machine are old and what parts are claimed as his invention; it is the more necessary in this case as the patent embraces the whole machine, whereas it is admitted that only parts were invented by the plaintiffs. If the improvement is not so specified as to discriminate between the original and improved machine, and the patent is taken according to its terms, it is broader than the invention, and therefore void. Whittemore v. Cutter [Case No. 17,601]; 11 East, 110. The law requires the specification to explain the precise improvement patented; if it is for a new combination of the old parts, the improved mode of operation and construction must be particularized; if for any new parts or additions, they must be specified, and their connection with the old parts explained. The specification is defective in both particulars; the law requires that it should set out every thing necessary to enable others to avoid any interference with the thing invented, to describe it in such clear terms that others

can use it, and the public have the benefits of it after the patent right has expired, otherwise it is void, although we do not make out a case of fraudulent addition or concealment, according to the terms of the sixth section of the law. If the specification is not strictly conformable to law, the patent is void, to whatever cause it is owing; it must speak for itself (Sayer, 254), so as to be intelligible without extraneous explanation, for the full and perfect explanation and description of the thing patented is the consideration of the grant, for the want of which it is void. [Evans v. Eaton] 7 Wheat. [20 U. S.] 423; [Evans v. Hettich] Id. 468. A perfect description is the plaintiff's only title which he must make out affirmatively on the face of the specification, for the benefit of the public, who are parties to all suits on patents, and public policy declares them void if they do not meet every requisition of the law. Davies, Pat. Cas. 55, 56. Patents being monopolies, in derogation of common law rights, are deemed odious in the law, unless they are clearly for an invention of the patentee; if the subject matter is not new, though new to the inventor, his patent is void, or if the patent embraces any thing not new. In this case the summary, which is the outline of the patent, refers to the whole machinery, without a clue to separate the old from the new, the parts disclaimed are useless, and those claimed are a mere change of the forms and proportions of the old parts. Judging from the specification, the patent is not for an improvement on a machine, or an improved machine, but for a result which is pointed out, it is wholly obscure as to the mode of operation, and the particular combination of the old and new parts which produce this result. on this account the patent is void. But if it is valid the plaintiff cannot recover in this case, because his patent is for a combination of machinery, and he has not shown that our machine adopts his whole combination,—Barrett v. Hall [Case No. 1.047], —or in what particular it is an infringement of his right.

Mr. Cadwalader and Mr. Sergeant. for plaintiffs.

If inventors are not protected, great injustice is done them. because they cannot be restored to their rights after they have disclosed their invention to the public by a specification, which enables any person to take advantage of it. In this case the invention is very plainly described in detail in the body of the specification, and in summing it up at the close. by declaring it to consist of a new combination of the various parts of the mould. &c., disclaiming its original invention and admitting its former use. It is not necessary to describe the old machine or its parts, which are as well known and familiar to a person who understands machinery, as a watch; a patent for an improvement on a watch is good without describing the watch (Davies. Pat. Cas. 45, 56): so of a steam engine (8 Durn. & E. [8 Term R.] 98). or an improvement in mill machinery ([Evans v. Eaton] 3 Wheat. [16 U. S.] 511). The specification is addressed to engineers and persons skilled in the business to which the improvement relates. Davies. Pat. Cas. 214, 216. If they understand the invention, and can produce the result, the object of the law is answered; when others are enabled to make the improved machine from the directions given in the specification, this is the scope and end of the matter (Pl. 18), required by the law; and when this can be done the patent is good. though the description may be imperfect, if it is not designedly so to mislead the public (Gray v. James [Case No. 5,718]; Whittemore v. Cutter [Id. 17,601]), and the disclosure made in the same good faith that is required in other contracts. 14 Ves. 131, 136; 1 Durn. & E. [1 Term R.] 606. By applying the specification to the old and improved machines, and putting them into operation, the invention is at once intelligible; and the summary and disclaimer limit it to the new combination (Moody v. Fiske [Case No. 9,745]; 8 Durn. & E. [8 Term R.] 103), so that it is as broad as the patent. By applying the same test to the defendants' machine, it is apparent that the whole improvement of the plaintiffs is used. If they allege that any part of what is claimed as the invention had been known or used before our application for a patent. the burden of proof rests on them to prove it to have been a public use, and not one in fraud of the patent, or after notice of the application. Pennock v. Dialogue, 1 Pet. [26 U. S.] 4, 14. Patents give a right of property in the invention; they are construed as other grants are, liberally. in favor of the grantee, and so that they shall be sustained, where there has been a substantial compliance with the law, and the subject-matter is a practical improvement. 11 East, 110; 2 H. Bl. 495; 1 Durn. & E. [1 Term R.] 606.

Before BALDWIN, Circuit Justice, and HOPKINSON, District Judge.

BALDWIN, Circuit Justice (charging jury). The plaintiff's patent is for a new and useful improvement, in the mode of manufacturing glass knobs by machinery at one operation, by spindles running through the centre of the knob, without blowing. The specification describes the manner of doing it, and concludes with a declaration, summing up the invention and disclaiming the right to the exclusive use of the mould, as formerly used, but claiming the invention to be a combination of the parts. with the use of the pin and machinery before described. It is admitted by the defendants that they have infringed the right of the plaintiffs as claimed by their patent. to the extent set forth in an account furnished under an order on the equity side of this court; also that the subject matter of the patent is so far useful as to come within the meaning of the law. But it is contended that the patent is void for two reasons. (1) Because the thing patented was not a new invention of the plaintiffs. (2) Because the specification which ac-

companies the patent is defective. in not discriminating between the old and new machine, and specifying the improvement patented; and by embracing in it the old parts of the machine, making the patent broader than the invention. These objections depend on the acts of congress directing patents to be issued on certain conditions, which must be complied with in order to give action to the special authority conferred. [Pennock v. Dialogue] 2 Pet. [27 U. S.] 18, 21. The subject of a patent is "the invention of any new and useful art. machine, manufacture or composition of matter, or any new and useful improvement thereon, not known or used before the application. Act 1793, 1 Story's Laws, 300, 301 [1 Stat. 318.]

No question is raised as to the utility of the plaintiff's machine; the word "useful" in the law is well settled to be used in contradistinction to frivolous improvements and inventions, or such as are injurious to the public. Lowell v. Lewis [Case No. 8.568]; Earle v. Sawyer [Id. 4.247]. The want of utility may be a good reason for not issuing a patent, but is no cause for avoiding it. Gray v. James [Id. 5.718] and [Id. 5,719]; Kneass v. Schuylkill Bank [Id. 7,875.] The first important inquiry therefore is whether the plaintiffs' patent is for a new improvement or invention made by them. It had been the subject of much difference of opinion, whether the words "not known or used before the application" in the first section, meant, "but had been in use or described in some public work anterior to the supposed discovery," as in the sixth section, or "known or used previous to such application for a patent," as in the first section of the act of 1800. 1 Story's Laws, 752 [2 Stat. 37]. It had been decided in the circuit courts that the previous knowledge and use related to the discovery, and that a patent was good though the invention was known and used at the time of the application. as the patent would relate to the discovery, unless the patentee had permitted its use under such circumstances as to authorize the presumption of abandonment, or dedication of the invention to public use. Goodyear v. Mathews [Case No. 5.576]; Morris v. Huntington [Id. 9,831]; Woodcock v. Parker [Id. 17.971]; Dixon v. Moyer [Id. 6.931]; Pennock v. Dialogue [Id. 10.941]; Treadwell v. Bladen [Id. 14,154]; Evand v. Weiss [Id. 4.572]; 4 Mass. 111. But in Pennock v. Dialogue, the supreme court have referred the words "known and used" to the application for the patent. according to the construction given by the English courts to the statute 21 Jac. I. c. 3, § 5 (3 Ruffh. St. 92), the words of which are, "which others at the time of making such letters patent and grants shall not use," which is thus construed, "for albeit it were newly invented, yet if any other did use it at the making of such letters patent, or the granting the privilege. it is declared and enacted to be void by this act. 3 Co. Inst. 184.

Vide Evans v. Eaton, 3 Wheat. [16 U. S.] 514, S. P. A previous use to avoid a patent must not be a private or surreptitious use in fraud of the patentee, but a public use by his consent, by a sale by himself, or by others with his acquiescence, by which he abandons his right. or disables himself from complying with the law; it is deemed a fraud in law to take out a patent after such use. Pennock v. Dialogue [supra]; Holt, N. P. 58, 60.

But unless the invention has been more or less used by others, or publicly communicated by the patentee, his patent will be sustained; the rule is well illustrated in the English cases, as adopted by the supreme court. If the first inventor makes the discovery in his closet, and confines the knowledge to himself, such knowledge will not invalidate a subsequent patent to another for the same thing. On the other hand, though persons engaged in the business to which it relates are generally ignorant of the invention, yet if one person had used it for some time with the knowledge of his two partners, and two servants engaged in its manufacture, and it appeared that a chemist had, in conversation with the patentee. suggested the basis of the invention; or when he had been informed of it by a person whom he employed to make models of the machine; or had adopted a machine which had been in a degree before used by a few. though a general ignorance of it was proved by many persons engaged in the trade, the patent is not good. Davies, Pat. Cas. 61; 2 H. Bl. 470, 487; 8 Taunt. 396, &c., and cases cited; s. c. 4 E. C. L. 375.

The priority of knowledge and use is a question of fact, which a jury may decide on the evidence of one witness; though numerous others of the greatest knowledge and skill in the matter are wholly ignorant of the invention, the question is on the credibility, not the number of witnesses. 8 Taunt. 395; Dixon v. Moyer and Pennock v. Dialogue [supra]. The time during which the thing patented had been known and used is not material. the criterion is its public, not its private or surreptitious use, but the use with the consent of the inventor express. or implied from circumstances. A patentee may take a reasonable time to make his specification, drawings, model, to try experiments on the effect and operation of his machinery. in order to know whether the thing patented can be produced in the mode specified; he may disclose his secret to those he may wish to consult. or call to his assistance any persons to aid him in making or using his machine, and preparations for procuring his patent. So if the machine is to operate publicly. as in steam boats. a public experiment may be made. or if the patentee is informed that others are using his invention, he may disclose it to them in order to give notice of what it consists. and caution them against its infringement. In either of these and like

cases, a disclosure of the secret would not be such previous knowledge, or the use of the invention be such an use, as would impair the patent if taken out in a reasonable time after the discovery, the question of due diligence or negligence is for the jury on all the circumstances of the case. Though the discovery by the patentee is new, yet if he is guilty of negligence in procuring his patent, by which the invention has become publicly known, and used by any persons, he has no right of action, the use must be surreptitious in fraud of his right in order to protect it. As to the novelty of the invention the rule is this, "it must be new to all the world, not the abstract discovery, but the thing invented, not the new secret principle, but the manufacture resulting from it; it must be new at the time of the application for the patent, in the words ,of the law. [Pennock v. Dialogue] 2 Pet. [27 U. S.] 20, 22. But it will be considered as new then, if the application is within a reasonable time after the discovery, if the patentee has not sold or permitted the use of the invention. There is this difference between the patent law of England, and the United States, arising out of the phraseology of their respective laws; the words of the statute of James are, "new manufacture within this realm," which are held to authorize a patent for an invention known and used in other countries, if it is new in England. 1 Salk. 446, 447. By the act of 1800, which is a gloss or commentary on the act of 1793,—[Pennock v. Dialogue] 2 Pet. [27 U. S.] 22,—the patentee must prove that the "invention hath not been known or used in this or any foreign country," hence it is held void if known or used before any where. Gray v. James [Case No. 5.718]; Reutgen v. Kanowrs [Id. 11,710]; Dawson v. Follen [Id. 3,670]; Evans v. Hettick [Id. 4,562]; Mellus v. Silsbee [Id. 9,404]. The novelty of an invention is either the manufacture produced, or the manner. of producing an old one; if the patent is for the former, it must be for something substantially new, different from what was before known; if the latter, the mode of operation must be different, not a mere change of the form and proportions; if both are the same in principle, structure, mode of operation, and produce the same result, they are not new, though there may be a variance in some small matter for the purpose of evasion, or as a colour for a patent. Nor is a discovery of some new principle. theory, elementary truth, or an improvement upon it, abstracted from its application, a new invention. But when such discovery is applied to any practical purpose, in the new construction, operation or effects of machinery or composition of matter, producing a new substance. or an old one in a new way. by new machinery, or a new combination of the parts of an old one. operating in a peculiar, better. cheaper. or quicker method, a new mechanical employment of principle al-

ready known, the organization of a machine embodied and reduced to practice on some thing visible, tangible, vendible, and capable of enjoyment, some new mode of practically employing human art or skill. It is a "discovery," "invention" or "improvement," within the acts of congress, and a "new manufacture by the statute of James." Odiorne v. Winkley [Id. 10,432]; Lowell v. Lewis [Id. 8,568]; Evans v. Eaton [Id. 4.560]: Dixon v. Moyer [Id. 3,931]; Pennock v. Dialogue [Id. 10.941]; [Evans v. Eaton] 7 Wheat. [20 U. S.] 361, 431: 8 Taunt. 391; 4 Burrows, 2361; 2 H. Bl. 468: 8 Durn. & E. [8 Term R.] 95; 2 Barn. & Ald. 349; Whittemore v. Cutter [Case No. 17,601]; Earle v. Sawyer [Id. 4,-247]. A patent may be for a mode, or method of doing a thing. mode when referred to something permanent, means an engine or machine, when to something fugitive. a method, which may mean engine, contrivance, device, process, instrument. mode and manner of effecting the purpose; the word principle may mean engine in an act of parliament under which the patent issued, or may mean the constituent parts thereof. A patent for a method of producing a new thing. may apply to the mechanism, a new method of operating with old machinery, or producing an old substance; a patent for a mode or method detached from all physical application, would not refer to an engine or machine, but when referred to the mode of operation, so as to produce the effect, would be considered as for an engine or machine. The words used as mode or method, are not the subject of the patent; it is the thing done by the invention, and patents are so construed ut res magis valeat quam pereat.

On this principle the patent of Mr. Watt "for a method of lessening the consumption of steam and fuel in fire engines," was sustained; as the intent was apparent, no technical words were deemed necessary to explain its object; and it was held to be a patent for an engine, machine and manufacture; such is the established law here and in England. [Evans v. Eaton] 3 Wheat. [16 U. S.] 512; 8 Durn. & E. [8 Term R.] 107. 108; 3 Ves. 140. You will apply these rules and principles of law to the whole evidence, without regarding so much the words as the evident intention of the patent; ascertain what is the subject matter of the patent, and the thing patented, next whether it was invented by the plaintiffs, and then whether it had been known and used before the application for the patent, in this or any other country, in such a manner as. within the rules laid down, would invalidate the right of the privilege granted.

The plaintiffs must make out their case to be within the law in all the particulars required; slight evidence is sufficient. 1 Durn. & E. [1 Term R.] 606. 607; [Pennock v. Dialogue] 2 Pet. [27 U. S.] 18. 19. If you believe plaintiffs' witnesses. their testimony is in law sufficient to establish their right. so

far as respects their invention and its novelty; the burthen of proving the previous invention, knowledge or use of the thing patented is on the defendants. They have given evidence sufficient in law to prove it, if you are satisfied of its truth in fact; the plaintiffs must rebut it by legal and credible evidence, or your verdict must be for the defendants. On this part of the case you will decide according to your opinion as to the matter of fact. Should you find that the plaintiffs are the inventors of the thing patented, and that it was not known or used so as to affect the validity of the patent, the next question is one of law, whether the invention claimed is a proper subject matter for a patent. On this point we have no hesitation in instructing you, that it is an improvement on a machine, manufacture or composition of matter, within the words and meaning of the law.

The next inquiry is, whether the patent is affected by the objections founded on the specification, viz., that it is broader than the invention, and otherwise defective. This depends on the construction of the words used to denote the intention of grantor and grantee, "as the end and scope of the matter, which is the matter itself, and the intent thereof also accomplished." Pl. 18a. The patent is for a new and useful improvement in the mode of manufacturing glass knobs, which is broad enough to include the whole machinery described in the specification, including the old machine and the old process of manufacture, not claimed by the plaintiffs as their invention. But the subsequent words summing up the invention intended to be patented, disclaiming the invention of the mould and other parts of the old machine, and declaring the patent to be for a new combination of the various parts of the mould, with the use of the pin and machinery before described, operate as a proviso restraining and limiting the patent to the object so specified, and excepting all other parts from the more general description. The disclaimer, at the close of the specification, estops the patentee from setting up any privilege to the part disclaimed, and the summary is equally binding on him, as a limitation to the thing patented. Moody v. Fiske [Case No. 9,745]; Kneass v. Schuylkill Bank, supra; Treadwell v. Bladen [Id. 14,-154]; 8 Durn. & E. [8 Term R.] 96, 103, 107. The specification is a part of the patent, and, taken together, they show that the subject matter patented is not the old machine, or its constituent parts in their distinct operations; but the combined result of the new and old machinery, produced by a new combination, addition and improvement. "The distinction between a machine and an improvement on a machine, or an improved machine, is too clear for them to be confounded; a grant of the exclusive use of an improvement in a machine, principle or process, is not a grant of the improvement only but the improved

machine, an improvement on a machine and an improved machine are the same." [Evans v. Eaton] 3 Wheat. [16 U. S.] 456, 509, 517; [Id.] 7 Wheat. [20 U. S.] 356, 423; Kneass v. Schuylkill Bank [Case No. 7,875]; Treadwell v. Bladen [Id. 14,154]; Whittemore v. Cutter [Id. 17,601]. A patent for a machine, consisting of an entire new combination of all its parts, is good, thought each part has been used in former machines, if the machine is substantially new in its structure and mode of operation; but if the same combination existed before, in machines of the same nature, up to a certain point, and the invention consists in adding some new machinery, in some improved mode of operation, or some new combination, the patent must be limited to the improvement, if it includes the whole machine it cannot be supported. [Evans v. Eaton] 7 Wheat. [20 U. S.] 430, 431; 2 Marsh. C. P. 211, 213; 2 H. Bl. 487; Evans v. Eaton [Case No. 4,559]; Whittemore v. Cutter [supra]; Moody v. Fiske [supra]; Pennock v. Dialogue [supra]. A patent must not be broader than the invention, or it will be void, not only for so much as had been known or used, before the application, but also for the improvement really invented. Bull. N. P. 76; 11 East, 110: Woodcock v. Parker [Case No. 17,971]; Odiorne v. Winkley [Id. 10,432]; Lowell v. Lewis [Id. 8,568]; Moody v. Fiske [supra]. The improvement patented must be the improvement invented. 8 Taunt. 394; 3 Mer. 629. If for a discovery, it must be for something new, not for an improvement only, each item must be a new invention, and the discovery must not fail in a material part. 2 Barn. & Ald. 345, 351; 4 Barn. & Ald. 549, 552; 1 Durn. & E. [1 Term R.] 605, 606; 2 Marsh. C. P. 213, 214; [Evans v. Eaton] 7 Wheat. [20 U. S.] 430. If for an improvement on a machine, the patentee must show the extent of the improvement, so that a person who understands the subject may know in what it consists. [Evans v. Eaton] 3 Wheat. [16 U. S.] 518. It need not describe the old machine, but must limit the patent to such improvement. [Id.] 7 Wheat. [20 U. S.] 435.

In using the word patent, in reference to the description of the thing patented, we must be understood as including the patent, the specification attached to it, with the model and drawing in the patent office, all of which are to be taken together as the description. In deciding on its sufficiency the court inspect the whole description as one paper, which they assume to be true in fact, and if found to be in conformity with the requisitions of the law, so that it appears with reasonable certainty, either from the words used or by necessary implication, in what the invention or improvement consists, as claimed by the patentee, they will adjudge it sufficient. Lowell v. Lewis [supra]. A description, though in some respects obscure, imperfect, or not so intelligible as to fully answer all the objects of the law, is

good if it enables the court to specify the improvement or invention patented, from the face of the patent and accompanying papers. It is enough if there is a substantial description of the thing patented, though defective in form or mode of explanation. In this respect the papers will be viewed in the same light as a declaration in a suit at law; the court, looking on them as a statement of the patentee's right and title, will overlook all defects in the mode of setting it out, if it contains a substantial averment of such matter as suffices in law to make out a cause of action. This is a question of law which the court decides, it is a question for the jury to decide, whether the statements are true in fact; the court does not look beyond the patent and the other papers, but the jury decide from the papers, the evidence of the witnesses, an inspection of the old and new machine and the model, to ascertain whether in point of fact the specification, as made out at the trial, is sufficient. [Evans v. Eaton] 7 Wheat. [20 U. S.] 366, 428, 433, 435; [Evans v. Hettich, Id.] 456, 457; 11 East, 113; 14 Ves. 131, 135; 3 Ves. 140; Langdon v. De Groot [Case No. 8.059]; Sullivan v. Redfield [Id. 13,597]; 1 Durn. & E. [1 Term R.] 602, 604; 8 Durn. & E. [8 Term. R.] 100, 108; 2 H. Bl. 473; 8 Taunt. 401; Lowell v. Lewis [supra].

In the present case our opinion is, that the description is sufficient in law, but whether it is sufficient in fact, is for you to decide according to your own opinion on the evidence, a comparison of the old and new machines, the mode of operation, the effect produced, and an examination of the model and all the papers. If the new machine, and its mode of construction and operation, is so explained as to enable you to specify the distinct improvement patented, then the specification is good in law and fact, unless it appears that something has been omitted which is required by the acts of congress to make the patent valid. The third section of the act of 1793 directs certain things to be done by the applicant for a patent before he is entitled to it, and gives the reasons therefor, but does not declare that the patent shall be void, if all the acts directed have not been complied with previously to its being granted. The sixth section specifies the cases in which the patent shall be void, which are not the omission of what was directed in the third section, but the defendant proving "that the specification filed by the plaintiff does not contain the whole truth relative to his discovery, or that it contains more than is necessary to produce the described effect, which concealment or addition shall fully appear to have been made for the purpose of deceiving the public, or that the thing thus secured by patent was not originally discovered by the patentee, but had been in use, or had been described in some public work anterior to the supposed discovery of the patentee, or that

he had surreptitiously obtained a patent for the discovery of another person, in either of which cases judgment shall be rendered for the defendant, with costs, and the patent shall be declared void." It is the exclusive province of the legislature to discriminate between what acts are to be done to authorize a patent to issue, and those which will make it void if done or omitted. When this has been done in clear explicit terms, a court cannot superadd requisites to the grant of the patent, or include other acts than those specified, which authorize them to declare it void, or so declare it if the specified acts or omissions are not proved to be fraudulent, or the thing patented was not new, &c. Laws are construed strictly to save a right or avoid a penalty, they are construed liberally to give a remedy, or to carry into effect an object declared in the law; but if a court, by construction, add an object not so declared, apply the penal provisions of the law to a case not within its definition, or exclude from the remedy provided a case defined, it is judicial legislation of the most odious kind, necessarily retrospective, and substantially and practically ex post facto. It is equally so to confound the parts of a law which are merely directory as to the acts to be done, with those which prescribe acts as conditions precedent to the vesting a right, or define those acts or omissions which authorize a court to annul a grant; for the direct effect would be, to impose on a plaintiff in a patent cause a forfeiture of his right by construction, when by the provisions of the law he was entitled to damages treble the amount of the injury he had sustained. No case could arise in which the language of the supreme court, in Fletcher v. Peck, would be more forcibly applicable; the character of ex post facto legislation, so severely reprobated in their opinion, would not depend on the tribunal which exercised it. Vide 6 Cranch [10 U. S.] 138, 139.

We cannot therefore give our sanction to the positions assumed by the defendants' counsel, that the patent is void if the specification is in any respect defective or for whatever cause, and that the public are parties to all suits for the infringement of patent rights. Congress have, in the sixth section, prescribed the rules of our decision in cases between individuals, and defined the causes for declaring a patent void on proof by a defendant; the trial is on a question of property, of private right, unconnected with the public interest, and without any reference to the public, unless a case is made out of a design to deceive them, and we cannot better express our sentiments on this subject, than in the words of a great English judge: "It is said it is highly expedient for the public, that this patent having been so long in public use, after Mr. Arkwright had failed in that trial, should continue to be open; but nothing could be more essentially mischievous, than that questions of

property between A and B, should ever be permitted to be decided upon considerations of public convenience or expediency. The only question that can be agitated in Westminster Hall is, which of the two parties, in law or justice, ought to recover." By Lord Loughborough. Arkwright v. Nightingale, Davies, Pat. Cas. 56.

We know of no principle which affords to this court a safer guide in administering justice in this building. Congress seem to have adopted it in the tenth section, by authorizing the district court in certain cases, by a summary process in the nature of a scire facias, to repeal the patent, which is a public prosecution in which public considerations operate, the sixth section is confined to civil suits in the circuit court. Herein consists an important difference between the patent law of England and this country. The statute of James I. did not regulate the action for an infringement of a patent right, consequently the English courts could only render judgment for the defendant, if the patent was not valid; they could not declare it void by a regular judgment, and the plaintiff could bring successive actions. The patent could be annulled, only by a scire facias in chancery, at the suit of the king. Rex v. Arkwright, Davies, Pat. Cas. 144. And in a suit for damages, nothing could be decided but the right of property. Davies, Pat. Cas. 56. The law of England having been thus declared in 1785, accounts for the sixth and tenth sections of the act of 1793, which were evidently predicated on these decisions, and passed with a direct reference to them, as held by the supreme court in [Pennock v. Dialogue] 2 Pet. [27 U. S.] 14. In referring to the English adjudications on the statute of James, we must therefore be careful to take the expressions of the judges in civil suits at common law, that a "patent is void," as not meaning that it becomes void by a judgment in favour of a defendant, on the ground of its invalidity in law; but only that it is voidable in chancery on a scire facias for that cause, and in a court of law, void as a legal foundation for an action for damages. A judgment in a court of law concludes only the parties to the suit, the patent may be given in evidence in other suits against new defendants, till it is cancelled in chancery; here it becomes annulled by a judgment in favour of a defendant in a circuit court, on proof of the kind required by the sixth section, or a judgment in the district court against the patentee, according to the provisions of the tenth. In England a patent is granted as a favour, on such terms as the king thinks proper to impose. Godson, Pat. 46, 48; 4 Barn. & Ald. 553. Here a patent is a matter of right, on complying with the conditions prescribed by the law. Morris v. Huntington [Case No. 9,831]. There the patent is not accompanied with a specification, none is filed or enrolled at the time, but it is done within the period pre-scribed in a proviso, setting forth the requisites of the specification, as conditions to be performed in order to make the patent valid, if not done it declares the patent void; these conditions are in the discretion of the king, but neither they nor the objects or reasons for granting the patent are declared or set forth; but the patent contains a declaration, that it shall be construed and adjudged, most favourably and benignly for the best advantage of the grantee, notwithstanding any defective and uncertain description of the nature and quality of the invention and its materials. Godson, Pat. 50, 155, 157, and cases cited; Bull. N. P. 76; 11 East, 107; 14 Ves. 136.

'In deciding on the sufficiency of these specifications, Lord Mansfield states the questions to be, whether it is sufficient to enable others to make up the thing patented, and the public to have the benefit of the invention after the patent has expired. Liardet v. Johnson (1778) Bull. N. P. 76, 77. These are the two tests which are applied to the specification, not by the words of the statute, but by the courts, in order to effectuate its supposed policy, as is very clearly expressed by Buller, J., in Rex v. Arkwright. "The party must disclose his secret, and specify his invention in such a way that others may be taught by it to do the thing for which the patent is granted; for the end and meaning of the specification is to teach the public after the term for which the patent is granted what the privilege expired is, and it must put the public in possession of the secret in as ample and beneficial a way as the patentee himself uses it. This I take to be clear law as far as respects the specification, for the patent is the reward which, under an act of parliament, is held out for a discovery, and therefore, unless the discovery be true and fair, the patent is void. Davies, Pat. Cas. 106, 128. Such is the settled rule in England. Id. 55–60; 1 Durn. & E. [1 Term R.] 605, 608. In its practical application it has been uniformly held, that the clearness of the specification must be according to the subject matter of the patent, it is addressed to persons in the profession, having knowledge and skill in the subject matter, from the nature of their business; if they can so understand it as to make the thing patented, by following the directions of the specification and plan, taking the old machine to their assistance, without any new invention of their own, then the patent is good, though men ignorant of the subject to which it relates may not understand it. Davies, Pat. Cas. 56, 128; 11 E. C. L. 472; 11 East, 108.

The patentee must specify his invention clearly and explicitly; any ambiguity affectedly introduced into the specification, or any thing done to mislead the public, will make it void. 1 Durn. & E. [1 Term R.] 606, 607. If the specification is sufficient in any part, any other part which is not necessary to understand it may be rejected as surplusage. 2 H. Bl. 489; 11 East, 111. One part may be sub-

stituted for another. 1 Car. & P. 566; 11 E. C. L. 468. If the patentee of an old machine procures a new patent, with certain improvements on the old machine, reciting the old patent, and with a specification of the whole machine so improved, but not describing the new parts or referring to the old specification, the new patent was held good by a reference to the old specification and drawing, and comparing the new with them. 11 East, 101, 113. The patent of Mr. Watt was sustained on the same principle; the description was held good by referring a workman to the old engine. The great object of the specification is to prevent the public from being misled by an evasive one having such tendency; a patent is a bargain with the public, in which the same rules of good faith prevail as in other contracts, and if the disclosure communicates the invention to the public the statute is satisfied. 14 Ves. 131, 136; 1 Durn. & E. [1 Term R.] 606, 607. As the English statute does not require a specification, these rules and principles are matters of judicial construction, on which the English courts act without any statutory directions. Their patent law is a proviso, excepting from the general prohibition of grants of monopolies by the king, "grants of privilege" "for the sole working or making of any new manufacture within this realm, to the true and first inventor and inventors of such manufactures, which others at the time of making such letters and patents shall not use, so as they be not contrary to law," &c. 3 Ruffh. St. 92, § 5. On this proviso their whole system of jurisprudence as to patents is built, by a series of adjudication according to what the judges presumed to be the object and intention of parliament. The silence of the law left a wide field open to the discretion of courts, in adopting such rules as would best effectuate its design, and best promote the interests of the public. But in this country the law is more explicit.

The constitution gives congress the power "to promote the progress of science and useful arts, by securing for limited times, to authors and inventors, the exclusive right to their respective writings and discoveries." This is a declaration by the supreme law of the land, of its objects and purposes, and the means of effecting them, which leaves no discretion to the judges to assign or presume any other or different ones. The acts of congress of 1790 (1 Story's Laws, 80 [1 Stat. 109]), and of 1793 (1 Story's Laws, 300 [1 Stat. 318]), are the execution by congress of their constitutional powers; the title of these acts is "to promote the progress of the useful arts;" the mode of doing it is by granting patents pursuant to the enacting clauses. The conditions of such grants are prescribed, among which is a specification or description of the invention to be patented, the requisites of which are defined: "And shall deliver a written description of his invention, and of the manner of using, or process of compounding the same, in such full, clear and exact terms as to distinguish

the same from all other things before known, and to enable any person skilled in the art or science of which it is a branch, or with which it is most nearly connected, to make, compound and use the same. And in case of any machine, he shall fully explain the principle and the several modes in which he has contemplated the application of that principle or character, by which it may be distinguished from other inventions." As to the specification then nothing is left to construction as to its requisites or purposes, both are so clearly defined, and in such a manner as to leave no discretion in courts to presume what was intended, to alter, add or diminish, where the law is so explicit. With the constitution, the English statute and the adjudication upon it before them, congress have declared the intention of the law to be to promote the progress of the useful arts by the benefits granted to inventors; not by those accruing to the public, after the patent had expired, as in England. This is most evident from their imposing as conditions, that the invention must be new to all the world, and the patentee be a citizen of the United States. If public benefit had been the sole object, it was immaterial where the invention originated, or by whom invented; but being for the benefit of the patentee, the meritorious cause was invention, not importation, and the benefit was not extended to foreigners, in which respects the law had been otherwise settled in England. Here the patent contains no proviso declaring it void, if the specification is not in conformity with the law; this is provided for in the sixth section as a substitute for the proviso, and defines the causes for which a circuit court can adjudge a patent void, in a civil suit, for defects in the specification. These are concealment or addition, fully appearing to have been made for the purpose of misleading the public, which is wilful fraud clearly proved; but the court cannot bring within this definition a patent with a specification defective on other grounds, still less act upon the English principle, that the specification is for the purpose of giving the public the benefit of the invention, after the expiration of the patent, as that would be in contradiction to the act of congress expressly assigning other reasons. Such has been the uniform construction of the law in the circuit courts, that a patent can be declared void for no other defect in the specification than fraudulent concealment or addition. Gray v. James [Case No. 5,718]; Reutgen v. Kanowrs [Id. 11,710]; Park v. Little [Id. 10,715]; Lowell v. Lewis [supra]; Whittemore v. Cutter [Case No. 17,600]; [Evans v. Eaton] 7 Wheat. [20 U. S.] 429, 430.

No discretion is left to the circuit courts to annul a patent for any reason not contained in the acts of congress; they have not left us free to infer motives, objects and grounds of supposed policy for requiring specifications; the third section of the act of 1793 defines them without any declaration, that the patent shall be void if the specification is defective.

English decisions therefore, founded on the assumed reason for the grant of a patent, are not of authority here where the constitution and laws give other reasons, and omit the one founded on the public benefit to result from the disclosure after the expiration of the privilege. You will therefore not make that a subject of deliberation, for it is not material whether the public can profit by the invention during or after the term of the patent. The true inquiry is whether, in the spirit of the law, the plaintiffs have made such a description of the thing patented as to distinguish it from all others before known, and to enable others skilled in the matter, to make, compound or use it, and to explain the principle and mode of application by which it can be so distinguished from other inventions. If from the patent, specification, drawings, model and old machine, clear ideas are conveyed to men of mechanical skill in the subject matter, by which they could make or direct the making of the machine by following the directions given, the specification is good within the act of congress. [Evans v. Eaton] 3 Wheat. [16 U. S.] 518; [Evans v. Eaton] 7 Wheat. [20 U. S.] 435. If the plaintiffs' patent is valid, it gives them a right of property in the thing patented, which is entitled to full protection in courts, the wise policy of the constitution and laws, for securing to inventors the exclusive privilege to use their discoveries for a limited time, has been fully illustrated by the great results produced by the skill of our citizens. Intended for their protection and security, the law should be construed favourably and benignly in favour of patentees, in the spirit of the proviso in patents in England. When the invention is substantially new, is useful to the public, and the disclosure by the specification and other papers, is made in good faith, and fairly communicated in terms intelligible to men who understand the subject, juries ought to look favourably on the right of property and to find against a plaintiff only for some substantial defect in his title papers, or proof.

Having given you our opinion on all the questions of law applicable to the case. it is submitted to your verdict. If you think the thing patented not new, but had been known or used any where, before the application for the patent, you will find generally for the defendants; so you will find, if the alleged improvement is in fact only a change of the form and proportions of the old machine or process. If you think the specification. &c. not descriptive of the invention, so as to be in compliance with the requisitions of the third section of the law, through accident, mistake or ignorance, you will find for the defendants, and specify the ground of your verdict. If you think the defect in the specification was intended to mislead the public. or should find against the plaintiffs on any other ground specified in the sixth section, you will specify it in your finding. so that the court may render the proper judgment. either generally for defendants. or add a judgment the effect of which will annul the patent. If you think the plaintiffs have made out their case, you will find such damages as they have proved they have actually sustained, they must prove their damages, if they have not done so you are not to supply the defect.

Verdict for plaintiffs 500 dollars.

A motion was made for a new trial for excessive damages, which was argued at October term 1831.

Mr. C. Ingersoll and Mr. C. J. Ingersoll, for defendant.

The jury have exceeded the actual damage sustained by the plaintiff, which the law has made the standard for their verdict. By the fourth section of the law of 1790 (1 Story's Laws, 81 [1 Stat. 109]), the plaintiff was to recover "such damages as shall be assessed by a jury"; by the fifth section of the act of 1793, "three times the price of a license to use the invention" (1 Story's Laws, 302 [1 Stat. 318]); by the third section of the act of 1800 (1 Story's Laws. 753 [2 Stat. 37]), "three times the actual damages sustained from or by reason of such offence." The meaning of this clause is apparent by a reference to the statute of Jac. I. § 4, "shall recover three times so much as the damages he or they shall have sustained by means or occasion," &c. 3 Ruffh. St. 92. By adding the word "actual," congress intended to exclude potential or speculative damages. "Actual" means "real, not potential" (Johns. Dict.); "real or effective," "that exists actually," "existing in fact" (Webst. Dict.); not what may be. Whittemore v. Cutter [supra]. The court must decide what are actual damages, even in case of a tort the jury ought to give the reasons of their verdict. Comb. 357; 2 Wils. 160. The court may ask them what they have made the standard of their verdict in patent cases. Whittemore v. Cutter. In [Gray v. James] supra, Judge Washington referred to the profitable use of the invention by the defendant. In 3 Wheat. [16 U. S.] Append. 26, the value of the use to the defendant is stated as the rule of damages. The injury done to the character of the plaintiffs was by the defendants making an inferior article, the reduction of the price by competition are merely speculative damages: the actual damage sustained, is to be ascertained as in cases of waste. the value of the property or estate wasted. The actual loss sustained by the infringement of a patent, is the profit made by the defendant while he uses the invention, the saving of labour by the improved machine, without regarding the value of the use of the parts not patented; the difference in the profits resulting from the use of the old as compared with the new, calculated by the time and extent to which the defendants have used it. is the true rule. In this consists the difference between a common law tort and a patent tort, in the former the jury have a discretion in award-

ing damages, in the latter they have a standard prescribed to them, as definite as on a contract for the payment of money or the delivery of goods; the damages cannot exceed the interest, so in patent cases, the defendant's profits are the measure of the plaintiff's loss.

Mr. Cadwalader and Mr. Sergeant, for plaintiffs.

The third section of the act of 1800 is a substitute for the fifth section of the act of 1793, and actual damages mean, the injury actually sustained, and the consequences of the infringement, which are not too remote to be traced to it, the words "for or by reason of," &c. put a patent tort on the same footing as any other tort. Gray v. James [supra]. A consequence of increased competition is a reduction of profits, the putting an inferior article into the market tends to throw out the pressed knob and substitute the blown knob in its place, whereas, on a fair comparison, the pressed are preferred. Here, as the infringement has been intentional, the plaintiff ought to recover the difference between the cost and the selling price of the knobs made by the defendants, by the use of the plaintiffs' improvement, which the jury have not exceeded, though they might have made an allowance for damages occasioned by wilful vexation, as may be done in trover. 6 Serg. & R. 426. No new trial will be granted, unless there has been a plain mistake in law or fact (3 Bin. 320); or if damages are too small or too large, unless for some other cause in addition (Walker v. Smith [Cases Nos. 17.086 and 17,087]). The case in Comb. 357, 358, only shows that the jury will not be allowed to exercise a despotic power. In Whittemore v. Cutter [supra], 350 dollars were given for merely making the machine, and a new trial refused. S. P., Gray v. James [supra]. These cases establish the rule that the jury may judge of the actual damage, as in the case of tort generally; those which affect the person or reputation of another are exceptions. The true question is. not what profits the defendants have made by the infringement, but what loss the plaintiffs have sustained; of this the jury are the proper judges, and the court will not disturb their verdict. unless they decide positively that the plaintiffs have not sustained 500 dollars damages in any view of the case. The jury may ascertain the damages from any cause which has injured the plaintiff. the difficulty of liquidating them under any definite head. as a matter of account, is no objection to their putting an estimate on the amount; as the loss of sales which the plaintiffs would have made had there been no infringement. In a word, the jury may allow the plaintiff whatever they may think from the evidence he has lost by the violation of his right by the defendants. and put him in the same situation as if he had had the exclusive use of his invention during the time the defendants have used it.

HOPKINSON, District Judge. The motion for a new trial in this case is rested on the alleged excessiveness of the damages. The act of congress gives the rule of damages, and if it has been violated, the verdict ought not to stand; on the other hand. the finding of a jury on a question so peculiarly within their province, will not be disturbed, unless it be made clear that they have disregarded and exceeded the measure of the law.

The congress of the United States, after two attempts, which proved to be unsatisfactory, to fix the amount of damages to be recovered from any person who should make, devise, use or sell the thing whereof the exclusive right is secured to a patentee, by an act passed on the 17th of April, 1800, established a rule which has since remained as the law of such cases. The third section of the act enacts, that any person offending as above mentioned "shall forfeit and pay to the said patentee, his executors, administrators and assigns, a sum equal to three times the actual damage sustained by such patentee, his executors, administrators or assigns. from or by reason of such offence." The practice under this act has been for the jury to find the actual or single damages, which are afterwards trebled by the order or judgment of the court.

It is obvious that the directions of the last act of congress are not, and could not be precise on such a subject, and that a considerable latitude is necessarily given to the jury in estimating what they shall consider to be the actual damage sustained by a patentee by the violation of his right; and the courts of the United States have shown no disposition to draw the power of the jury, in this respect, within close and narrow limits. The elements of such a calculation in various cases that occur, are so various, and sometimes in their nature so uncertain, that the estimate of a jury must be very extravagant to enable the court to say, that they have so disregarded the rule of the law. and so clearly exceeded the limits of their authority, that their verdict cannot be supported. Are the jury to take as the actual damage sustained by the patentee, the benefit or profit made and received by the offender by the use of the invention? or the profit which the patentee would have made by the same use of his invention. but has lost by the illegal interference with his right? May they deduce the latter from the former, and consider proof of the profits made by the offender to be evidence in fact of the injury or damage sustained by the patentee? This is broad ground, on which the jury may rightfully move; and the error of their calculation must be made clear and certain, before the court can undertake to correct it by overthrowing their verdict. Still wider limits have been insisted upon for the jury by the counsel of the plaintiffs. They have contended that, as an item in the estimation of actual damages, the jury may examine and determine the loss sustained by the reduction of the price of the articles manufactured by the

patented machine, in consequence of the competition brought into the market against them, when the patentee had a right to a monopoly; and going yet further, they say, that the injury done to the reputation of the manufacture, by the inferior skill and workmanship of the offender, may be fairly and legally brought into the calculation of actual damage. Whether this may or may not be done, must depend upon the particular case under consideration, and the nature of a question of damages shows that what may be a good rule in one case, would be altogether inadmissible in another. All the items or elements above mentioned may be brought into the account, provided that there be evidence satisfactory to the jury to bring them within the character and description of "actual damages," proved in fact to have fallen upon the plaintiff, "from or by reason of" the offence of the defendant; but they should not be allowed when they are merely hypothetical, imaginary or speculative. It is not enough that injury may have been suffered by these means; the plaintiff has a right to recover only such damages "as he can actually prove, and has in fact sustained." It must not rest in conjecture, but must be susceptible of proof, and be actually proved.

While the courts of the United States sitting on patent cases, have adhered to these principles in their construction of the act of congress, they have not been inclined to interfere with verdicts, but keeping them within this boundary, have rather given a loose rein to juries in the exercise of their power over the damages. This is abundantly shown by the cases referred to at the bar. In Whittemore v. Cutter [Case No. 17,601], decided in 1813, the question of the damages to be recovered for the violation of a patent right, was considered by Judge Story. In that case, the plaintiff proved only that the defendant had made his patented machine, and not that he had ever used it. Here there was neither profit made by the defendant or lost by the plaintiff, nor any reduction of the price of the article manufactured by a competition in the market; nor an injury to its reputation by inferior workmanship. Where then are we to look for the constituents of damage in such a case? The counsel for the plaintiffs contended, "that although there is no evidence of actual damage, the jury ought to give damages either to the full value of the expense of making the machine or of the price at which such a machine might be sold." The judge rejected these pretensions for the most satisfactory reasons. He stated to the jury, that "it is clear by the statute that only the actual damages sustained can be given;" and he explains this actual damage to mean "such damages as the plaintiff can actually prove, and has in fact sustained, as contra-distinguished to mere imaginary or exemplary damages." This is a rational and satisfactory interpretation of the phrase. The

judge thus instructs the jury, that "if they are of opinion that a use of the machine is actually proved, the rule of damages should be the value of the use of such machine, during such illegal use." This language is not exactly precise. It is not clear whether the judge would be understood; when he speaks of the value of the use of the machine, "he means its value to the illegal use of it, or the value which its owner could or might have derived from it during the time of the illegal use." The rules are or may be very different. If the latter were intended by the judge, it is in fact the direct and actual damage sustained by the patentee; if the former, it is the profit or advantage made of the machine by the offender, which may be more or less than the patentee would have derived from it. We see, however, no objection to another explanation of the language of the judge, that is, that the jury ought to take the value of the use of the machine to the spoliator, not as the direct ground of their verdict, but as a test or means by which, in the absence of other proof, they might estimate the damage done to the plaintiff. In either construction the judge meant to conform to the language of the act of congress, and affirm the rule he set out with, "that only the actual damage sustained can be given." The jury gave 350 dollars single damages, finding at the same time, "that the defendant was guilty of making the machine only;" no attempt appears to have been made to disturb the verdict, although the judge had charged the jury, that in such a case, "the plaintiff can recover nominal damages."

The case of Gray v. James [Case No. 5,718], decided in this circuit in 1817, was an action for violating the plaintiff's patent right in the art of cutting and heading nails by one operation. Jacob Perkins was the inventor of this machine, which was so defective that, after a trial, it was altogether abandoned; and it did not appear that it had ever been used afterwards by any person. The defects of Perkins's patent were cured by one Jesse Reed, who patented his improved machine; but the two machines were precisely on the same principle. The jury gave a verdict for the plaintiff, and assessed his single damages at 750 dollars. A motion was made on the part of the defendant for a new trial and in arrest of judgment. One of the reasons in support of the motion was, that the damages given by the jury were excessive, and the argument was, that Perkins's machine was acknowledged by himself to be worthless; and that it was in fact thrown away as a useless thing, and was so considered by those who knew any thing about it, consequently his assignees sustained no damage by the use which the defendant made of it. The judge was of opinion that "the premises may be admitted, and yet the argument terminated in what is called a non sequitur." We can-

not say that we are satisfied with the ingenious reasoning of the learned judge, to support this opinion; nor do we see how the owner of a thing, absolutely worthless, and which he had thrown away as useless, can sustain any actual damages, by the use of this thing made useful only by being combined with some thing else, or so changed in its operation by an invention to which the owner of the worthless machine had no title or claim. He has lost nothing, he has been deprived of nothing that was of any value to him, what then has been his injury or damage? If the act of congress had given the advantage or use made by another of a particular machine as the rule of damages, then indeed a worthless invention, made valuable by an improvement, might entitle the inventor to compensation for the use of his invention, and perhaps on principles of equity and justice, he ought to have it. But the law does not take this rule, but the damages actually sustained by a patentee by the use of his invention, and not the value that has been imparted to it by a subsequent inventor; nor the use which such inventor has made of it, provided he has not by such use inflicted any loss, injury or damage upon the patentee. His damages, and not another's gain, are made the rule for the jury. It is not like the case of Whittemore v. Cutter [supra], where the machine made by the defendant was the same with that patented by the plaintiff, and where we have agreed that, in the absence of other evidence, the jury may assume the value of the use of the machine to the spoliator as proof of the damage or injury done to the patentee. The judge who decided the case of Gray v. James [supra], seems to be hardly satisfied with supporting the verdict on the reasoning we have quoted, for he adds, "but the fact is that Perkins's machine was proved at the trial to possess intrinsic value on the single ground of saving labour, whether the value so proved justified the jury in finding the damages which they did, is a question of which this body were the proper judges upon the evidence laid before them, and the court sees no reason to find fault with them."

A patentee however whose invention, though worthless to himself, has become useful to another may not be deprived of it without his consent, for it is his property; nor can another use it for any purpose without responsibility to him. Such as it is, of much value or little value, or of no value, the law has guarantied the exclusive possession of it to the inventor, and the law will prevent any interference with his right, and every use of the thing invented against the will of the owner. Although no damages can be recovered by the provisions of the act of congress, in a case where no damages have actually been sustained, the patentee has nevertheless a remedy for the invasion of his right peculiarly appropriate for such a case. He may have an injunction upon the wrong doer, which will prevent the unauthorized use of his invention, and put it in his power to compel the invader either to abandon it or make him a just compensation for the use of it. The court would exercise this power to do what is right and equitable between the parties, and so as to prevent imposition and wrong by either.

Without embarrassing the question now to be decided with a review of all the evidence that has been brought into the discussion, it will be sufficient to advert to the admitted fact that the defendants manufactured five-hundred and seventy-one dozen of glass knobs, by the use of the machine invented and patented by the plaintiffs; all of which were sold by the defendants, with the exception of some that were imperfect. From the bill produced of one of the sales, these knobs were sold at a great profit. The profit obtained by the defendants on the sale of these knobs was a fair and legal subject for the calculation and judgment of the jury on the evidence laid before them; and they had the same right to take this profit as the rule or measure by which they would estimate the actual damage sustained by the plaintiffs by this invasion of their rights. Although the profit gained by the defendants is not the amount to be recovered by the plaintiffs as their damage, yet it is that from which a calculation or estimate of that damage may be rightfully made by the jury. If in this case the jury have taken this profit as their guide and measure in assessing the actual damage sustained by the plaintiffs, can the court say that they have done wrong, or that under the evidence laid before them we could give them a better rule? Can we say that they have exceeded the power and discretion allowed to them, so that it becomes the duty of the court to undo all that they have done, and set aside their verdict as contrary to the law or evidence of the case? we think not.

If the payment of the sum for which a judgment must be rendered against the defendants shall be oppressive or inconvenient to them we shall regret it, because they appear to have acted under a mistaken opinion of the rights of the plaintiffs, from misinformation in relation to the validity of their claims of invention, and not from an obstinate or malicious design to injure them or benefit themselves by a wilful disregard of the rights of the plaintiffs. An intelligent and impartial jury have passed upon the case; "and the court sees no reason to find fault with them." The plaintiffs having established their right, and having no reason to apprehend any further interference with it, it would have been satisfactory to the court if some reasonable and liberal compromise could have been made with the defendants, who appear to be industrious and

useful mechanics, which would have made our judgment unnecessary. We do not feel authorized to press the suggestion further.

Rule discharged.